**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **MICHAEL JAMES MOTTO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:06-00163** |
| | ) | |
| **CORRECTIONAL MEDICAL SERVICES,** | ) | |
| **ST. LOUIS, MO.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court are the following Motions: (1) Defendants James Rubenstein, Division of Corrections, and State of West Virginia's Waiver of Reply and Alternative Motion to Dismiss (Doc. No. 8.), filed on December 1, 2006; (2) Defendants Mary Westfall, Larry Williamson, M.D., Correctional Medical Services, Inc. ("CMS"), and Donald Holmes', M.D., Motion to Dismiss (Doc. No. 17.), filed on December 18, 2006; and (3) Plaintiff's Motion to Include Mr. Thomas McBride, Warden, Mt. Olive Correctional Complex, as a Defendant (Doc. No. 22.), filed on January 18, 2007.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 2, 2006, Plaintiff, an inmate in confinement at Mount Olive Correctional Complex [MOCC], in Mt. Olive, West Virginia, and acting *pro se*, filed a Complaint and an Application to Proceed Without Prepayment of Fees and Affidavit.[1] (Doc. Nos. 1 and 2.) Plaintiff names as Defendants the following individuals and entities: (1) Correctional Medical Services, St. Louis, MO

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

("CMS"); (2) Correctional Medical Services, MOCC ("CMS"); (3) Mary Westfall, H.S.A.-CMS at Mt. Olive; (4) Dr. Larry Holmes, Physician - CMS at MOCC; (5) Dr. Williamson, Physician-CMS at MOCC; (6) West Virginia Division of Corrections; (7) James Rubenstein; and (8) State of West Virginia. In his Complaint, Plaintiff alleges as follows:

> Medical treatment has been substandard, it has been more than 2 yrs of a delay for a surgery I need since refer[r]ed to Dr. Zaslov at University Hospital in Morgantown W.Va. From Dr. Edgenton at Montgomery General in Montgomery, W.V. When surgery was attempted in August 2005 by Dr. Zaslov the delay by CMS at Mt. Olive caused it not to be able to be performed, so instead of a 45 minute to a 1 hour procedure, I must endure a 4 to 6 hour operation. This operation is for 2 restrictions in my urinary tract. The lack of it has cause[d] over 3 yrs of trouble urinating, pain in bladder, abdomen and severe kidney pain, numerous kidney and urinary tract infections, 5 or 6 infections just since August. Was supposed to return to Morgantown within 2-3 weeks of August 11, 2005. Delay by CMS has been 5 ½ months thus far. This is malpractice, medical indifference, medical neglect, etc.

(Doc. No. 1 at 4-5.) He indicates that he exhausted his claims administratively. (Id. at 3.) Plaintiff seeks an injunctive order directing the Defendants to arrange for him to undergo the surgical procedure by Dr. Zaslov and to provide proper medical treatment. (Id. at 5.) Plaintiff seeks damages in the amount of $30,000,000 from CMS; $100,000 from Mary Westfall, Dr. Holmes, and Dr. Williamson (Id. at 5-6.); $1,000,000 from West Virginia Division of Corrections; $100,000 from James Rubenstein; and $1,000,000 from State of West Virginia. (Id. at 6.) By Standing Order filed on March 2, 2006, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. No. 4.)

On November 16, 2006, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees, and Summonses were issued. (Doc. Nos. 6 and 7.) On December 1, 2004, Defendants Commissioner James Rubenstein, Division of Corrections, and State of West Virginia

(hereinafter, the "State Defendants") filed their Waiver of Reply and Alternative Motion to Dismiss and Memorandum in Support. (Doc. Nos. 8 and 9.) In seeking dismissal of this case, the State Defendants assert that (1) the State of West Virginia and Division of Corrections are not "persons" subject to suit under 42 U.S.C. § 1983, and that the State of West Virginia and its Division of Corrections are protected against suit under the Eleventh Amendment of the United States Constitution (Doc. No. 9 at 2-3.); (2) the State Defendants are entitled to qualified immunity (Id. at 3-4.); (3) Plaintiff has failed to state a claim for deliberate indifference to his medical conditions, and therefore, Plaintiff cannot meet the objective and subjective components of the applicable Eighth Amendment analysis (Id. at 4-6.); and (4) the State Defendants cannot be liable as supervisors on the basis of the doctrine of respondeat superior. (Id. at 6-7.) Specifically, the State Defendants contend that it is clear from Plaintiff's Complaint that he "is being provided access to health care providers" and that "[t]hese defendants cannot be charged with second guessing the clinical decisions of the treatment providers." (Id. at 5.) Citing Pinkney v. Davis, 952 F.Supp. 1561 (M.D. Ala. 1997), the State Defendants assert that Plaintiff has not produced any evidence that their actions or inactions caused the alleged deprivation of medical care. (Id. at 5-6.) For this reason, the State Defendants assert that Plaintiff's claim that they violated his constitutional rights has no merit. (Id.)

Defendants Mary Westfall, Dr. Williamson, CMS, and Dr. Holmes (hereinafter, the "Medical Defendants") filed their Motion to Dismiss and Memorandum in Support on December 18, 2006. (Doc. Nos. 17 and 18.) In their Memorandum in Support of their Motion to Dismiss, the Medical Defendants contend that Plaintiff's Complaint must be dismissed because (1) Plaintiff's process and service of process was insufficient (Doc. No. 18 at 1-3.), (2) Plaintiff has failed to state a claim

against Defendants in that he has neither articulated the elements of a medical malpractice claim in West Virginia nor stated a claim of deliberate indifference to a serious medical need in violation of the Eighth Amendment to the United States Constitution (Id. at 3-6.), and (3) the Court lacks subject matter jurisdiction over Plaintiff's claim as it "is most easily construed as one for medical malpractice under state law." (Id. at 6-7.) Regarding their first ground for dismissal, Defendants Mary Westfall, Dr. Williamson, and Dr. Holmes assert that Plaintiff did not serve them personally as required under Rule 4 of the Federal and West Virginia Rules of Civil Procedure. (Id. at 1.) Rather, Plaintiff served these Defendants at their putative place of work where Sandra Neal received service of process at MOCC. (Id.) Regarding Dr. Larry Holmes, counsel for Defendants state that there is no such person associated with CMS who would have treated Plaintiff at any time. (Id. at 2.) Consequently, counsel enters an appearance on behalf of Dr. Donald Holmes, as requested by his insurance carrier, but asks the Court to dismiss the Complaint against him because Plaintiff failed to name him properly and made no attempt to correct the misnomer. (Id.) Counsel states ,however, that he has had no contact with Dr. Donald Holmes. (Id.) Concerning Plaintiff's medical malpractice claims, the Medical Defendants assert that Plaintiff fails to make any allegations against the individual defendants, allege a physician/patient relationship between Defendants and himself, indicate how a delay in providing the surgery is unreasonable or how Defendants are responsible for it, demonstrate how CMS is liable for the other Defendants' actions, and failed to provide notice of his claim prior to filing suit or provide the requisite certificate of merit from a qualified expert. (Id. at 5.) Considering Plaintiff's claims under 42 U.S.C. § 1983, Defendants further assert that Plaintiff failed to allege either that they were aware of and disregarded a substantial risk of harm to Plaintiff or that CMS had a policy or custom that caused a violation of his civil rights. (Id. at 5-6.)

4

By Orders entered on December 12 and 20, 2006, the Court notified Plaintiff of his right to respond to the Defendants' Motions to Dismiss pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). (Doc. Nos. 16 and 19.) On December 28, 2006, Defendants Mary Westfall, Dr. Williamson, Dr. Holmes, and CMS filed their Supplemental Memorandum in Support of their Motion to Dismiss. (Doc. No. 20.) In their Memorandum, counsel for the Medical Defendants asserts that since filing the previous Memorandum, he has established communications with Dr. Donald Holmes and reaffirms the grounds for dismissal as previously asserted. (Id.)

On January 18, 2007, Plaintiff filed a Motion to Amend his Complaint, seeking permission to name Thomas McBride, Warden of MOCC, as a Defendant in his Complaint. (Doc. No. 22.) Plaintiff asserts that Warden McBride, while acting under color of state law, violated his rights under the Eighth and Fourteenth Amendments of the United States Constitution. (Id. at 1.) In support of his Motion, Plaintiff asserts:

> It has become clear to the Plaintiff that Mr. McBride's actions in the events leading up to the above style action being filed he should have been included as a defendant with the original filing. His actions were a direct cause of the claims made by the Plaintiff. The Plaintiff feels the Warden should be held accountable for his actions. This should be clear in the Plaintiff's Objections and Response to the Defendants Commissioner James Rubenstein, the Division of Corrections and the State of West Virginia's Waiver of Reply and Alternative Motion to Dismiss.

(Id. at 2.) Plaintiff further filed on January 18, 2007, his Objections and Response to the State Defendants' Waiver of Reply and Alternative Motion to Dismiss. (Doc. No. 23.) Plaintiff asserts that he is suing Defendant James Rubenstein and proposed Defendant Thomas McBride in their professional and personal capacities, and, therefore, they are not entitled to qualified immunity. (Id. at 2.) He further asserts that Commissioner Rubenstein and Warden McBride violated "their responsibilities as supervisors in their respective positions. . . [and] should be held liable instead of

using their supervisory positions as a shelter against their respo[n]sibility of adequate medical treatment of inmates under their care." (Id. at 2-3.) He explains that Commissioner Rubenstein is "responsible for the treatment and care of the prisoners within [the State] institutions" and Warden McBride "is responsible for the operation of the institution and staff under his control. (Id. at 3.) He states that Warden McBride is required "to receive, properly investigate the grievance and resolve said grievance placed before him and he does have the power to act." (Id.) Plaintiff asserts that "[w]hen the Warden and Commissioner chose the 'hands off' approach they made a conscience decision to prolong the pain and suffering, surely this is a deliberate act on their part and constitutes deliberate indifference and deliberate neglect to the Plaintiff's medical needs." (Id. at 4.) Specifically, Plaintiff asserts that after Commissioner Rubenstein and Warden McBride were informed that surgery was ordered by an outside physician, they

> failed to investigate or act upon this information [which] ensures their liability in this case. They did not need to make any type of medical decision, only make CMS live up to its contract with the D.O.C. and Mt. Olive Correctional Complex to provide the medical care the Plaintiff needed. Their failure to act and enforce CMS to provide treatment an outside doctor ordered/recommended directly led to a prolonged and unnecessary period of pain and suffering and thus again makes them liable for this inaction. As the Warden and Commissioner did not act to enforce CMS to uphold the contract for medical care to the Plaintiff they also failed in their supervisory capacity.

(Id. at 5.) He further asserts that he can show that Commissioner Rubenstein and Warden McBride "were fully aware of the Plaintiff's serious medical condition, as the Plaintiff filed grievances bringing his medical needs to the Defendants." (Id. at 8.) Plaintiff states that he is seeking $50,000 compensatory and $50,000 punitive damages each from Commissioner Rubenstein and Warden McBride. (Id. at 6.)

Plaintiff filed on January 24, 2007, his "Objections and Response to Defendants Mary Westfall, Larry Williamson, M.D., Correctional Medical Services, Inc., and Donald Holmes, M.D.

Motion to Dismiss." (Doc. No. 25.) Regarding the Defendants' claim of insufficient process and service of process, Plaintiff states that he provided the Court with properly completed service forms for the United States Marshal Service. (Id. at 2.)

> Once the Plaintiff mailed these service forms in good faith to the Court he feels the responsibility of the service is out of his hands. The Plaintiff knows no other way to serve upon the defendants in a civil action than to do as he did and mail said forms to the proper people for service of the suit and that said suit was served properly.

(Id.) He argues that as an incarcerated individual, he "has no knowledge of the defendants home addresses and thus had them served at the only place he had/has knowledge of." (Id. at 3.) Concerning Dr. Donald Holmes, Plaintiff asserts that he was advised by MOCC medical personnel that his first name was Larry, and therefore, requests that the Court "correct the misnomer of Dr. Donald Holmes in this case and serve upon Dr. Holmes the enclosed service form." (Id. at 5.) The fact that Dr. Holmes is no longer associated with CMS does not provide a basis to dismiss his claims against him. (Id.)

Plaintiff attempts to clarify his claims against Defendants Mary Westfall, Dr. Holmes, and Dr. Williamson, as follows. (Id. at 6-10.)

> The Plaintiff has been diagnosed with an urethral stricture and a right hydrovreteronephrosis. This diagnosis was made originally by Dr. Peter Edgenton of the Montgomery General Hospital and in early November 2002 Dr. Edgenton performed a visual urethrotomy on the Plaintiff, then in December 2002 performed a right retrograde pyelogram, a right ureteral stent replacement and removal and a cystoscopy. Less than a year later the urethral stricture was present again. The Plaintiff was again referred to Dr. Edgenton by CMS. At that point Dr. Edgenton referred the Plaintiff to the University Health Associates for the next operation as he was not confident that the stricture would not return if performed at Montgomery General but with the advanced equipment at Ruby Memorial Hospital at the University Health Associates Dr. Edgenton was confident treatment would be successful. This referral was made by Dr. Edgenton around August or September 2003, which can and will be shown thru discovery. (Motion for discovery is forthcoming).

The Plaintiff was unnecessarily delayed by the defendants named herein until August of 2005 when he was transported for the referred operation. A visual urethrotomy was attempted by Dr. Zaslov of the University Health Associates but because of this 2 yr delay the procedure could not be performed because the stricture was so small the guide wire on the endoscope would not pass thru. Instead Dr. Zaslov placed a superpubic catheter in the patient by punching a hole into the bladder from the plaintiff's lower abdomen. The Plaintiff was then informed that he would need an open urethrotomy and that would be scheduled in 2 to 3 weeks. After several complaints to CMS's staff members, grievances filed, notice of filing with the Attorney General, then this lawsuit, the Plaintiff was finally transported back to Morgantown on the 1st of March 2006 for the 2nd procedure by Dr. Zaslov. After the surgery, a 3 day hospital stay, a 3 week recovery at Mt. Olive's infirmary the Plaintiff is still having to catheterize himself on a weekly basis until a follow up in approximately 6 months. He may possibly have to self catheterize himself for the rest of his life. The pain and suffering caused by these delays, the problems voiding my bladder thus causing numerous infections, the pain of having the super pubic catheter stuck thru his lower abdomen, the swelling of the right kidney due to the stricture between the right kidney and bladder, the stricture causing the kidney to drain very slowly, causing said swelling, this constant swelling, slow draining, swelling again caused severe pain undue suffering and a substantial risk to the Plaintiff's health because of these infections. The deliberate decisions made by Ms. Westfall, Dr. Williamson, Dr. Holmes and CMS to delay this necessary surgery and extend the pain & suffering of the Plaintiff surely constitutes medical malpractice, deliberate medical indifference and deliberate medical neglect on the part of the above named defendants. The pain and suffering was never fully alleviated as the doctors named in this case never provided adequate pain medication. Thus another consci[ous] decision by the defendants to prolong the Plaintiff's pain & suffering. Thus the deliberate actions of the defendants to leave the Plaintiff in pain surely is something the defendants should be held liable for under the protection from pain & suffering and cruel & unusual punishment thru the 8th & 14th Amendments of the U.S. Constitution. Since the surgery the Plaintiff has had to also undergo the painful self catheterization that has been required by Dr. Zaslov, 1st on a daily basis, then 3 days a week, then bi-weekly and now once a week for at least 6 months and maybe a lifetime. As stated this self catheterization is painful to perform and causes the Plaintiff embarrassment and humiliation as the Plaintiff must go to medical front desk to get the necessary items needed. As to the Plaintiff not citing a federal statute, he obtained the instructions, forms for filing a 42 U.S.C. § 1983 action for violation of the Plaintiff's civil rights.

\* \* \*

CMS, thru its staff, is contractually obligated to provide medical treatment to the prisoners under its care, Dr. Williamson & Dr. Holmes, by way of their personal decisions chose to cause the Plaintiff pain & suffering, thus violating his constitutionally protected rights. Mary Westfall is responsible for the administrative duties over CMS. This translates to that she monitors patient care but may not have

the training or ability to make such a medical determination. When a grievance is filed she must rely on medical personnel to decide the course of treatment and when a prisoner files a grievance on one or more of her medical staff she is obligated to ensure a proper investigation is made, including checking on what an outside doctor recommended/ordered for a patient under CMS care that a CMS doctor referred the patient to. Once it is brought to her attention that CMS's doctors under her supervision are ignoring a referred doctor's recommended/ordered course of treatment the load is on her to make it occur. She did not, thus is deliberate medical indifference, deliberate medical neglect, dereliction of her duties and malfeasance of office.

(Id. at 6-10.) Plaintiff further asserts that Defendants have an "unofficial policy of delaying care as long as possible, mot likely to attempt to save money and boost profits." (Id. at 11.)

## THE APPLICABLE STANDARD

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atlantic Corporation v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007)(reference to Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), omitted.) Deference is given to *pro se* Complaints. See Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir.), cert. denied, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978)(A District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings.); Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965)(*Pro se* plaintiff should be given an opportunity to particularize potentially viable claims.). Where a *pro se* Complaint can be remedied by an amendment, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

1.      **Defendants State of West Virginia and Division of Corrections' Motion to Dismiss (Doc. No. 8.)**

Suits against a State or State agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution.[2] See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). The Eleventh Amendment protects states from being sued in federal Court on the basis of State law. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 117, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Westinghouse Elec. Corp. v. West Virginia Dep't of Highways, 845 F.2d 468, 470 (4th Cir.), cert. denied, 488 U.S. 855, 109 S.Ct. 143, 102 L.Ed.2d 116 (1988). The Eleventh Amendment immunity not only applies to States and State agencies, but extends to suits filed against State officials when "the relief sought and ordered has an impact directly on the State itself." Pennhurst, 465 U.S. at 117, 104 S.Ct. at 917. See also, Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996)("This immunity extends to 'arm[s] of the State,' (citations omitted) including state agencies and state officers acting in their official capacity. (citations omitted)). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dept. of State Police, 491 U.S. at 71, 109 S.Ct. at 2312. A State may, however, waive its constitutional immunity in one of two ways:

> (1) directly by statutory or constitutional provision, or (2) "constructively" by voluntarily participating in a federal program when Congress has expressly conditioned state participation in that program on the state's consent to suit in federal court.

Westinghouse, 845 F.2d at 470 (internal citations omitted.)  Waiver by statutory or constitutional

_____

[2] The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

provision must contain "an 'unequivocal' statement of the state's intention to subject itself to suit *in federal court*." Id. For purposes of civil actions brought pursuant to 42 U.S.C. § 1983 in federal Court, "a state's general waiver of sovereign immunity will not suffice to waive the immunity conferred by the eleventh amendment." Id.

The State of West Virginia and Division of Corrections, which is an agency of the State of West Virginia, are immune from suit under the Eleventh Amendment, unless the State has waived its immunity. Neither means of waiver, however, is present here. Accordingly, to the extent Plaintiff is seeking damages from State of West Virginia and Division of Corrections, his claims are barred by the Eleventh Amendment and must be dismissed.

2.     **State Defendants' Motion to Dismiss Plaintiff's Supervisory Liability Claims. (Doc. No. 8.)**

The allegations stated in Plaintiff's Complaint of violations of his constitutional rights are cognizable under 42 U.S.C. § 1983. A claim under 42 U.S.C. § 1983 must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. Id. Liability under the doctrine of *respondeat superior* is generally inapplicable to actions arising under 42 U.S.C. § 1983. See Monell v. Department of Soc. Serv. of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, liability is personal, based upon each defendant's own constitutional violations." Liability can be premised, however, "on a recognition that supervisory indifference or 'tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984), cert. denied sub nom., Reed v. Slakan, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). A plaintiff must show "a pervasive and unreasonable risk of harm from some

11

specified source and that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" <u>Id.</u> at 373. Evidence of a supervisor's continued inaction in the face of documented widespread abuses provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates. <u>Id.</u>

Defendant Commissioner Rubenstein contends that Plaintiff has failed to demonstrate how he was personally involved in violating Plaintiff's constitutional rights under the Eighth and Fourteenth Amendments. (Doc. No. 9 at 6-7.) Plaintiff's claims against him appear "to be wholly supervisory in nature." (<u>Id.</u> at 7.) He asserts that he does not practice medicine, and therefore, is unable to "simply cho[o]se to accept an inmate's desired course of treatment over that of [a] physician." (<u>Id.</u>) Additionally, Commissioner Rubenstein argues Plaintiff has not set forth a sufficient exception to the prohibition against supervisory liability because he "cannot be expected to countermand a physician's orders, whether right or wrong." (<u>Id.</u>)

The undersigned finds that Plaintiff has alleged nothing more than a vague assertion that Defendant Commissioner Rubenstein violated his constitutional rights and has failed to demonstrate any element of his personal involvement. Accordingly, Plaintiff has improperly raised his claims against Defendant Commissioner Rubenstein under the doctrine of *respondeat superior*, has failed to establish supervisory liability, and, therefore, Defendant Commissioner Rubenstein must be dismissed as a Defendant in this civil action.

**3.    Defendants' Motion to Dismiss for Insufficient Process and Service of Process (Doc. No. 17.)**

Defendants Mary Westfall, Dr. Williamson, and Dr. Holmes, argue that Plaintiff's Complaint against them should be dismissed for insufficient process and insufficient service of process. (Doc.

No. 18 at 1-3.) These Defendants assert that Sandra Neal received service of process for Defendants Mary Westfall, Dr. Williamson, and Dr. Holmes. (<u>Id.</u> at 1.) They assert, however, that Ms. Neal "is not an agent appointed by or any other means to accept service of process for these individuals." (<u>Id.</u>) Defendants contend that Plaintiff served Defendants at their putative place of work and has not served them "personally or at their dwelling place" as required by Rule 4 of the Federal and West Virginia Rules of Civil Procedure. (<u>Id.</u> at 1.) Regarding Dr. Holmes, counsel for Defendants Mary Westfall, Dr. Williamson, and CMS, asserts that "[t]here is apparently no Dr. Larry Holmes associated with CMS who would have treated this plaintiff as a physician at any time." (<u>Id.</u> at 2.) Counsel believes that Plaintiff intended to sue Dr. Donald Holmes. (<u>Id.</u>) Counsel seeks dismissal of this case against Dr. Donald Holmes, however, because Plaintiff failed to name him properly or to request that the Court correct the misnomer in his Complaint. (<u>Id.</u>) Counsel further states that Dr. Holmes' insurance carrier retained counsel to represent his interests and prevent default judgment from being entered against him. (<u>Id.</u>) Counsel makes clear that he has not established any communication with Dr. Holmes and that Dr. Holmes has most likely not received notice of this civil action. (<u>Id.</u>)

Plaintiff asserts that he completed the form U.S. Department of Justice United States Marshals Service forms for service, Form U.S.M.-285, and mailed them to the Court for service, together with his Complaint and Application to Proceed Without Prepayment of Fees. (Doc. No. 25 at 2.) According to Plaintiff, once he mailed these forms to the Court, "the responsibility of the service [was] out of his hands." (<u>Id.</u>) Plaintiff asserts that as an inmate he does not have knowledge of Defendants' home addresses, and, therefore, directed service at the only address of which he was aware, their places of employment. (<u>Id.</u> at 2-3.) To this end, he contends that Sandra Neal, as an

employee of the MOCC Post Office, was authorized to accept service on the Defendants' behalf. (Id.) Plaintiff requests an opportunity to obtain Defendants' appropriate personal addresses should the Court find that his Complaint should be dismissed for insufficiency of service of process. (Id. at 25.)

Title 18, U.S.C. § 1915(d) provides that the "officers of the court shall issue and serve all process, and perform all duties" in matters in which the plaintiff has been permitted to proceed *in forma pauperis*. 28 U.S.C. § 1915(d). Rule 4(c)(2) of the Federal Rules of Civil Procedure permits any person who is not a party and is at least 18 years of age to effect service. Fed. R. Civ. P. 4(c)(2). The Rule further provides that the Court "may direct that service be effected by a United States marshal, deputy United States marshal, or other person or officer specially designated by the court for that purpose." Id. In the instant action, Plaintiff completed the appropriate Summonses and the Clerk's Office sent them by certified mail to the addresses reflected thereon. (Doc. No. 7.) Plaintiff directed that service be made on Defendants at their places of employment. In view of Plaintiff's present custody status, the undersigned finds that it would be inappropriate to dismiss Plaintiff's claims against Defendants Mary Westfall, Dr. Williamson, and Dr. Holmes, for insufficient service of process. The Court chose to effect service by certified mail as opposed to utilization of the Marshals Service as requested by Plaintiff. As an inmate, Plaintiff's access to officers' home addresses is limited. Accordingly, the undersigned recommends that the District Court allow Plaintiff a limited period of time to obtain the Defendants' personal addresses through discovery. Alternatively, Defendants may waive service under Rule 4(d) of the Federal Rules of Civil Procedure.

Furthermore, Plaintiff demonstrates that he attempted to ascertain Dr. Holmes' first name from employees at MOCC. He was advised that Dr. Holmes' first name was "Larry," and named Larry Holmes, M.D., as a Defendant in his Complaint. Plaintiff learned, most likely for the first time through the Medical Defendants' Motion to Dismiss, that Dr. Holmes' first name was not "Larry," but is "Donald." In his Response to the Medical Defendants' Motion, Plaintiff seeks permission to amend his Complaint to correct Dr. Holmes' name. The undersigned finds that upon learning of his error, Plaintiff sought to correct it, without undue delay. Accordingly, the undersigned finds that dismissal of Plaintiff's claims against Dr. Donald Holmes is inappropriate.

### 4. Defendants' Motion to Dismiss Plaintiff's Eighth Amendment Claims under 42 U.S.C. § 1983 (Doc. Nos. 8 and 17.)

The Eighth Amendment protects against the infliction of "cruel and unusual punishments." As a general matter, prohibited punishments include those which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Thus, under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 -

15

27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101

S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of

"the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an

Eighth Amendment violation); The Eighth Amendment "does not mandate comfortable prisons."

Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent that such conditions are

restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses

against society." Id. at 347, 101 S.Ct. at 2399; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995),

*citing* Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Lopez v.

Robinson, 914 F.2d 486, 490 (4th Cir. 1990). Sentenced inmates are therefore constitutionally

guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions

of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective

standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and

safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 -

2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's

act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id.

at 298, 111 S.Ct. 2321 (*citing* Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392); see also

Coppage v. Mann, 906 F.Supp. 1025, 1037 (E.D.Va. 1995)("A medical need is 'serious' if it is 'one

that has been diagnosed by a physician as mandating treatment or one that is so serious that even a

lay person would easily recognize the necessity of a doctor's attention' or if denial of or delay in

treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'", *citing* Monmouth

County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S.

1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988)). "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(*quoting* Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.), cert. denied, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991), cert. denied, 510 U.S. 1096, 114 S.Ct. 931, 127 L.Ed.2d 223 (1994)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. The Fourth Circuit stated the applicable standard in Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. * * * Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay

in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) Thus, intentional denial of or delay in treatment of an inmate may violate the Eighth Amendment. Estelle v. Gamble, 429 U.S. at 104 - 105, 97 S.Ct. at 291; Coppage v. Mann, 906 F.Supp. at 1041 (E.D.Va. 1995)("[A]n unusually long delay between the emergence of a serious medical need and treatment of that need may provide a reasonable basis for an inference of deliberate indifference.") When an inmate alleges a delay in treatment in violation of his Eighth Amendment rights, "the objective seriousness of the deprivation should be measured 'by reference to the *effect* of delay in treatment.'" Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997); see Baker v. District of Columbia, 2002 WL 32539618, *6 (E.D.Va.), *quoting* Crowley as above.

In view of the foregoing standard, Plaintiff in this case must first allege and eventually establish a "sufficiently serious" medical need, deprivation of adequate medical care, and resulting "serious or significant physical or mental injury" in order to maintain his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege

18

and establish each Defendant's awareness that he was receiving constitutionally inadequate medical care and disregard for the serious physical and mental consequences.

Viewing the evidence favorably to Plaintiff, the undersigned finds that Plaintiff experienced an urethral stricture, which required a visual urethrotomy in November, 2002, and an ureteric stent removal and replacement in December, 2002. In August, 2003, less than a year later, the stricture recurred and a physician outside MOCC recommended that Plaintiff undergo a surgical procedure at Ruby Memorial Hospital where the equipment was more advanced. Plaintiff alleges that Defendants delayed in acting on the physician's referral for surgery for two years. Plaintiff alleges that due to the two year delay, the stricture had become more narrow such as the endoscope would not pass through. Consequently, Dr. Zaslov was required to insert a superpubic catheter through Plaintiff's lower abdomen, which was to have been followed by an open urethrotomy in two or three weeks. Plaintiff alleges, however, that Defendants again delayed in providing him with the second surgical procedure until March 1, 2006. As a result of the delays in receiving medical care, Plaintiff alleges that he was required to undergo a different surgical procedure, which caused severe pain, swelling, and infections. Plaintiff also alleges that he must use a catheter for at least six months, and maybe for the remainder of his life. It appears from Plaintiff's Complaint that Drs. Williamson and Holmes were physicians employed through CMS with whom MOCC contracted to provide medical care for its inmates. Plaintiff's Complaint and Response further indicate that Defendant Mary Westfall was employed by CMS to monitor and investigate inmate medical complaints and grievances, and presumably determine whether the treatment is necessary and coordinate the recommended medical treatment. Accordingly, in viewing the evidence in the light most favorable to Plaintiff, the undersigned finds that at this early pleading stage, Plaintiff has stated a claim that

he may have suffered a medical need which gave rise to a substantial risk of serious harm or a condition for which the lack and delay of treatment caused the sort of continuous, severe, acute pain which suffices to support an Eighth Amendment claim, such as to defeat the Medical Defendants' Motion to Dismiss for failure to state a claim. Accordingly, Defendants' Motion to Dismiss (Doc. No. 17.) with regard to Plaintiff's constitutional claims should be denied and Plaintiff accorded the opportunity to develop his pleadings.

5.    **Defendants' Motion to Dismiss Plaintiff's Medical Malpractice Claims. (Doc. No. 17.)**

Defendants contend that Plaintiff cannot maintain a negligence action for medical malpractice pursuant to the FTCA because Plaintiff failed to comply with the pre-filing requirements of the West Virginia Medical Professional Liability Act [MPLA]. The MPLA requires that at least thirty days prior to filing a civil action the claimant provide the health care provider against whom the claimant is seeking recourse notice of the claim which includes a statement of theory of liability and a screening certificate of merit.[3]

---

[3] The West Virginia MPLA specifically requires:

(b) At least thirty days prior to the filing of the medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening of merit must be provided for each health care provider against whom a claim is asserted.

Under certain circumstances, the District Courts of West Virginia have held that the pre-screening requirements of the West Virginia MPLA are satisfied on filing of an administrative claim. See Johnson v. United States, 394 F.Supp.2d 854 (S.D.W.Va. 2005); Stanley v. United States, 321 F. Supp.2d 805, 809 (N.D.W.Va. 2004). The facts of the Johnson case, in which the plaintiffs proceeded on a theory of liability under the Federal Tort Claims Act, involved allegations that a surgeon at the Huntington Veterans Administration Center failed to properly perform an operation involving the implantation of a penile prosthesis. The plaintiffs specifically alleged that the penile prosthesis was too large and was inserted backwards, causing plaintiff Thomas Johnson to suffer diminished blood flow and an infection. The United States moved to dismiss the case on the ground that the plaintiffs failed to provide the defendant with a screening certificate of merit. The Court held that the administrative claims which the plaintiffs had filed were sufficient to satisfy West Virginia Code § 55-7B-6(c),[4] which carves out an exception to the requirement of providing a screening certificate of merit when the cause of action is based upon a well-established theory of liability that does not require expert testimony and where the claimant files a statement setting forth the basis of the alleged liability. The Court concluded that plaintiffs' administrative claim form

---

W. Va. Code § 55-7B-6(b)(2006).

[4] West Virginia Code § 55-7B-6(c)(2006) provides:

Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate.

which plaintiffs had previously filed provided sufficient notice to the defendant for purposes of satisfying West Virginia Code § 55-7B-6(c). The Court further found that when considering the case in light most favorable to the plaintiffs, plaintiffs' claim was such that the facts of the case may not require expert testimony in order to establish liability.

In the instant action, Plaintiff essentially contends that CMS medical staff violated its standard of care by waiting two years to send him for the recommended surgical procedure. Generally, "negligence or want of professional skill can be proved only by expert witnesses." Banfi v. American Hosp. for Rehab., 207 W. Va. 135, 140, 529 S.Ed.2d 600, 605 (2000)(*citing* Syl. pt. 2, Roberts v. Gale, 149 W. Va. 166, 139 S.Ed.2d 272 (1964)). However, expert testimony is not required "in cases involving negligence claims within the jury's common knowledge as nonmedical laypersons." Id. More specifically, the West Virginia Supreme Court of Appeals has held that:

> In medical malpractice cases where lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience, failure to present expert testimony on the accepted standard of care and degree of skill under such circumstances is not fatal to a plaintiff's *prima facie* showing of negligence.

Syl. Pt. 4, Totten v. Adongay, 175 W. Va. 634, 634-35, 337 S.E.2d 2, 2-3 (1985). The undersigned finds that Plaintiff's allegations are such that would require expert testimony to establish whether CMS medical staff breached the standard of care in rendering Plaintiff medical treatment with respect to his condition.

The undersigned, however, must next determine whether dismissal of Plaintiff's medical malpractice claim is appropriate in view of the Court's holding in Cooper v. Appalachian Reg'l Healthcare, Inc., Civil Action No. 5:04-01317, 2006 WL 538925 (S.D.W.Va., Mar. 3, 2006)(C.J. Faber). In Cooper, the plaintiffs filed suit against various medical providers. The defendants moved

to dismiss the suit on the ground that the plaintiffs failed to comply with the West Virginia MPLA arguing that the plaintiffs' certificate of merit was deficient on various grounds. Although the Court found that the defendants had waived their objections with respect to the alleged deficiencies of the screening of merit, the Court held that even if the defendants had preserved their objections to the certificate, the Court did not believe that dismissal would be appropriate in view of the West Virginia Supreme Court of Appeals' interpretation of the MPLA pre-suit filing requirements. The Court noted that the West Virginia Supreme Court of Appeals has "made clear that the MPLA is not intended to restrict access to the courts or create an opportunity for gamesmanship." Id. at *2 (citing Hinchman v. Gillette, 217 W.Va. 378, 618 S.Ed.2d 387, 394 (2005). Moreover, the Court noted that "[t]he thrust of the court's position is that plaintiffs must make a good faith and reasonable effort to further statutory purposes of preventing frivolous claims and promoting pre-suit resolution of claims." Id. (citing Hinchman, 618 S.Ed.2d at 395). The Court concluded that it would be too harsh a remedy to dismiss the suit when plaintiffs made a good faith attempt at complying with the pre-suit requirements and had attached a certificate from a nurse which provided support for most of plaintiffs' allegations helping show that plaintiffs' claims were not frivolous. Id. at *3.

In the instant action, although Plaintiff filed an administrative claim which  arguably provides the Defendants with notice of the claim as required by the MPLA, Plaintiff is unable to provide  Defendants with notice of the claim as required by the MPLA, to ensure the statutory purpose of preventing frivolous claims as he has offered no evidence that CMS medical staff violated its standard of care by waiting two years to send him for a recommended surgical procedure. Plaintiff relies only on his own bare assertions that his pain, suffering, and different surgical procedure was caused by CMS' medical staff's failure to provide appropriate care.

Accordingly, in view of the facts and circumstances of the case, Plaintiff's claim for negligent medical care must be dismissed for failure to comply with the MPLA. See Callahan v. Cho, 437 F.Supp.2d 557 (E.D.Va.  2006)(analyzing the WV MPLA and holding that plaintiff's FTCA malpractice action alleging that surgeon who performed hip replacement surgery violated the standard of care by leaving a needle tip in plaintiff's muscle tissue required expert testimony and that plaintiff's failure to comply with West Virginia's MPLA's screening certificate requirement was fatal to plaintiff's claim).

In Stanley v. United States, 321 F.Supp.2d 805, (N.D.W.Va. 2004), the Northern District of West Virginia considered the same issue. In Stanley, the United States moved to dismiss a medical malpractice action because the plaintiff failed to comply with the MPLA. The plaintiff argued that the MPLA was inapplicable and that his suit could not be dismissed because he complied with the FTCA. The Court found that the filing requirement under the MPLA is substantive and operates in addition to the FTCA and, therefore, the plaintiff's suit was dismissed for failure to comply with MPLA. The undersigned agrees with the analysis in Stanley and finds that the MPLA must be followed regardless of whether the case was filed in federal or state court. See also, Foreman v. Federal Corrections Institution, Beckley, Civil Action No. 5:04-cv-01260 (S.D.W.Va. March 29, 2006)(dismissing case in part for Plaintiff's failure to comply with the pre-screening requirements of the West Virginia MPLA); Shenko v. United States Dep. of Justice, 1:05-cv-00673, Doc. No. 61. (In dismissing Plaintiff's claims under the FTCA for failure to comply with the West Virginia MPLA, Chief Judge Faber held: "Even allowing for plaintiff's pro se status, the court cannot rewrite West Virginia law to allow plaintiff's procedurally barred claim to proceed."). Therefore, the

24

undersigned recommends that Defendants Mary Westfall, Dr. Williamson, Dr. Holmes, and CMS'

Motion to Dismiss Plaintiff's negligence claims under the West Virginia MPLA be granted.

6.      **Plaintiff's Motion to Include Mr. Thomas McBride, Warden, Mt. Olive
        Correctional Complex, as a Defendant (Doc. No. 22.)**

On January 18, 2007, Plaintiff filed his "Motion to Include Mr. Thomas McBride, Warden,

Mt. Olive Correctional Complex, As a Defendant to the Above Styled Case." (Doc. No. 22.) Plaintiff

asserts that Warden McBride, "in both his professional and personal capacities, as Warden of

M.O.C.C. [was] acting under color of state law [and violated] Plaintiff's 8th & 14th Amendment

rights." (Id. at 1.) He further asserts that Warden McBride's "actions were a direct cause" of his

claims. (Id. at 2.) In his Response to the State Defendants' Motion to Dismiss, Plaintiff further

asserts that as Warden, Mr. McBride "is responsible for the operation of the institution and its staff

under his control." (Doc. No. 23 at 3.) He defined some of his responsibilities as receiving, properly

investigating, and resolving inmate grievances. (Id.) Plaintiff further asserts that Warden McBride

acted deliberately indifferent to his serious medical needs when, "after being informed that the

surgery ordered by an outside doctor was being put off unduly by CMS, failed to investigate or act

upon this information." (Id. at 5.) Plaintiff contends that Warden McBride's "failure to act and

enforce CMS to provide treatment an outside doctor ordered/recommended directly led to a

prolonged and unnecessary period of pain & suffering." (Id.) Consequently, Plaintiff asserts that

Warden McBride failed to act in his "supervisory capacity." (Id.) Plaintiff alleges that Warden

McBride was "fully aware of the Plaintiff's serious medical condition, as the Plaintiff filed

grievances bringing his medical needs to the Defendants." (Id. at 8.) None of the Defendants filed

a response to Plaintiff's Motion.

25

Rule 15(a) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires." The Supreme Court articulated the standard to be applied in determining whether to allow an amendment under Rule 15(a), in Forman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962):

> If the underlying facts or circumstances relied upon by the plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason - such an undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should, as the rules require, be "freely given."

Although the decision to grant a Motion to Amend remains within the sound discretion of the District Court, granting leave to amend is strongly favored by the federal rules. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971)(citing Forman, 371 U.S. at 182, 83 S.Ct. at 230 (dictum).); Medigen of Kentucky, Inc. v. Public Service Comm'n, 985 F.2d 164, 167-68 (4th Cir. 1993). Nevertheless, leave to amend may be denied on the ground of futility when the proposed amendment is "clearly insufficient or frivolous on its face." See New Beckley Mining Corp. v. Int'l Union, 18 F.3d 1161, 1164 (4th Cir. 1994); Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986).

The undersigned finds, as with Commissioner Rubenstein, that Plaintiff has alleged only vague assertions that Warden McBride violated his constitutional rights. Plaintiff has not established any personal involvement by Warden McBride. Rather, Plaintiff appears to allege liability against Warden McBride improperly under the theory of respondeat superior. He states that Warden McBride should have known of his medical condition because he filed the appropriate administrative

26

grievances. He further seems to allege that Warden McBride should have been aware of his medical condition because he is instilled with the authority to enforce the contract for medical care with CMS. Plaintiff, however, has not alleged any facts which amount to deliberate indifference or tacit authorization of the alleged failure of CMS to provide him with certain medical care. Accordingly, the undersigned finds that Plaintiff seeks to raise improperly claims against Warden McBride under the doctrine of respondeat superior, has failed to establish supervisory liability, and therefore, his Motion to include Warden McBride as a Defendant in this matter must be denied as futile.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal analysis and **RECOMMENDED** that the District Court **GRANT** the State Defendants' Motion to Dismiss (Doc. No. 8.), **GRANT in part and DENY in part**, the Medical Defendants' Motion to Dismiss (Doc. No. 17.), **DENY** Plaintiff's Motion to Amend (Doc. No. 22.), and refer this matter back to the undersigned for the scheduling of further proceedings regarding the claims raised in Plaintiff's Complaint.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which

objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to send a copy of the same to counsel of record and to Petitioner, who is acting *pro se*.

DATE: August 27, 2007.

R. Clarke VanDervort
United States Magistrate Judge

28